HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AWEIDA ARTS, INC.,

Plaintiff,

v.

PURE GLASS DISTRIBUTION, INC.,

Defendant.

CASE NO. C14-757RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the motion of Defendant Pure Glass Distribution, Inc. ("Pure Glass"), to dismiss this action because the court lacks personal jurisdiction over it, or, in the alternative, to transfer this action to the Central District of California. Pure Glass requested oral argument; Plaintiff Aweida Arts, Inc. ("Aweida"), did not. The court finds oral argument unnecessary. For the reasons stated below, the court DENIES Pure Glass's motion. Dkt. # 12.

## II. BACKGROUND

As the court will soon explain, Pure Glass's motion requires the court to accept as true the uncontroverted allegations of Aweida's complaint, and to resolve any conflicts in the evidence in favor of Aweida. It is through that prism that the court describes the facts relevant to its disposition of Pure Glass's motion. No one should mistake that description for findings of fact.

Aweida, a Washington corporation whose employees and offices are entirely within the State of Washington, designs and sells what it calls, at least in this lawsuit, "glass water pipes"—devices commonly used to smoke marijuana. Nathan Aweida, the glass artist who is the sole owner of Aweida, designs the pipes. Nothing contradicts Mr. Aweida's assertions that his designs have gained substantial renown. Since at least August 2010, he has used the "Swiss Perc" mark in connection with those pipes. The record reflects that Aweida prominently marks the pipes with the words "Swiss Perc" in cursive script.

Aweida representatives encountered Pure Glass at a Las Vegas trade show in August 2011. Pure Glass, a California corporation whose employees and offices are entirely in the Los Angeles area, was selling pipes that were similar in appearance and bore the phrase "Swiss Perc by Pure." Aweida contends that Pure Glass representatives were falsely telling others that Mr. Aweida had designed the pipes. Shortly thereafter, Mr. Aweida and an employee visited the Pure Glass website. A Facebook icon at the top of the page linked to a "Swiss Perc" page on Facebook. That page, which Aweida maintained, noted that Swiss Perc was a Seattle company.

Aweida took two actions upon discovering Pure Glass's "Swiss Perc" pipes and their false association with Mr. Aweida. First, it filed an application to register the "Swiss Perc" mark with the United States Patent and Trademark Office ("PTO"). That led to the discovery that Pure Glass had just recently filed its own application to register that mark. Aweida filed an opposition to that application before the PTO's Trademark Trial and Appeal Board ("TTAB"). Although the parties conducted some discovery in that opposition proceeding, the TTAB stayed it after Aweida filed this lawsuit. Second, Aweida sent a cease-and-desist letter to Pure Glass in October 2011. That letter accused Pure Glass of infringing Aweida's trademark. It also left no doubt that Aweida was a company located in Washington and that Mr. Aweida, the artist who designed Aweida's

pipes, was a Seattle resident. The letter demanded that Pure Glass cease production and sales of the "Swiss Perc" pipes. There is no direct evidence as to whether Pure Glass received the letter. A fact finder could infer that Pure Glass did receive the letter, especially because Pure Glass has not denied its receipt.

When Pure Glass refused to cease the use of the "Swiss Perc" mark, Aweida filed this lawsuit in May 2014. It alleges false designation of origin and unfair competition in violation of the Lanham Act, along with Washington-law claims for trademark infringement, injury to business reputation, and unfair competition in violation of the Washington Consumer Protection Act.

Putting aside the evidence of its dispute with Aweida, there is no evidence that Pure Glass has any relevant contacts with Washington. It does not target Washingtonians as customers, it has never sent representatives to Washington for any purpose, it has no record of a sale to or other business relationship with anyone in Washington, and it has no property in Washington. The Pure Glass website touts its pipes, but does not target the residents of any state. The website provides contact information for the company, but does not permit visitors to order products from the website.

Pure Glass asserts, moreover, that a third party, Bio Hazard, Inc., also a California company with no Washington presence, is responsible for the acts about which Aweida complains. It contends that Pure Glass is "currently only a licensor," and that it has never manufactured glass pipes bearing the "Swiss Perc" mark. Vo Decl. (Dkt. # 13) ¶¶ 12, 18. It contends that it has licensed the "Pure Glass Mark" exclusively to Bio Hazard, although it is silent as to whether it authorized Bio Hazard's use of the "Swiss Perc" mark. *Id.* ¶ 14. It also asserts that Bio Hazard is responsible for maintaining the Pure Glass website, although it provides no evidence about when Bio Hazard assumed that responsibility. It does not, for example, say anything about who placed the link to Aweida's Facebook page on Bio Hazard's website in 2011. It also provides no evidence

to dispel the inference that it controls what Bio Hazard does via the Pure Glass website. Aweida disputes Pure Glass's assertions about its relationship with Bio Hazard, noting that Pure Glass suspiciously failed to mention Bio Hazard until it filed the motion now before the court. That observation is persuasive to the court, particularly where Pure Glass, in June 2013 responses to interrogatories in the TTAB proceeding, stated that it "distributes *its* SWISS PERC goods through a wholesaler . . . ." Feil Decl. (Dkt. # 17), Ex. 1 at Interrog. No. 3 (emphasis added). The court need not resolve that dispute, however, because Pure Glass's assertions about Bio Hazard, even if they are accurate, do not meaningfully change the factual picture relevant to this court. It is undisputedly Pure Glass, not any third party, who applied to register the "Swiss Perc" trademark and is embroiled in the TTAB opposition proceeding with Aweida. The evidence thus supports the inference that if Bio Hazard is using the "Swiss Perc" mark, it is doing so with Pure Glass's permission. Pure Glass cannot avoid liability for trademark infringement by leaving it to a third party to make and sell products using the infringing mark. Nothing contradicts the reasonable inference that Pure Glass controls Bio Hazard's use of its marks, including the "Swiss Perc" mark, and thus nothing contradicts the inference that Pure Glass has authorized any infringement for which Bio Hazard might also be liable. Moreover, Pure Glass says nothing about when its licensing agreement with Bio Hazard began, leaving open the possibility that that agreement postdates the beginning of Pure Glass's use of the "Swiss Perc" mark. For example, Pure Glass says nothing about who was responsible for the Pure Glass booth at the August 2011 trade show. For at least these reasons, the court will not further discuss Pure Glass's relationship with Bio Hazard.

Pure Glass's motion contends that it is not subject to personal jurisdiction in Washington, and that even if it is subject to jurisdiction here, the court should transfer venue to the Central District of California. The court now considers that motion.

## III. ANALYSIS

### A. Pure Glass is Subject to Personal Jurisdiction in this Court.

When a defendant, like Pure Glass here, invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). A plaintiff builds a prima facie case by providing evidence that, if believed, would support the court's exercise of jurisdiction. *Id*. at 1129. The court need not accept a plaintiff's bare allegations if the defendant controverts them with evidence. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in the plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129. If appropriate, the court must grant a party's request for an evidentiary hearing to determine personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977). No one has requested an evidentiary hearing in this case.

In a case like this one, where no federal statute governs personal jurisdiction, the court's jurisdictional analysis starts with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute (RCW § 4.28.185) extends personal jurisdiction to the broadest reach that the Due Process Clause of the federal Constitution permits. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989).

There are two species of personal jurisdiction: specific and general. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 & n.9 (1984). Both species depend on the defendant's contacts with the forum. "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim," whereas general jurisdiction is not. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir.

2007). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts in the state. *Bancroft & Masters*, 223 F.3d at 1086. A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts with the forum state. *Id.* Aweida does not assert that Pure Glass is subject to general jurisdiction in Washington; the court therefore considers only whether Pure Glass is subject to specific jurisdiction.

**1. The Three-Part Test for Specific Jurisdiction**

A three-part test determines whether the assertion of specific jurisdiction over a defendant comports with the Due Process Clause:

> 1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or [a] resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden as to the first two parts of the test. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff meets that burden, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction is unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

**2. Purposeful Direction at Washington – the Effects Test**

In the first part of the specific jurisdiction test, purposeful availment and purposeful direction are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. In

the Ninth Circuit, tort cases typically require a purposeful direction analysis, whereas contract cases typically require a purposeful availment analysis. *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672-73 (9th Cir. 2012). Here, Aweida does not attempt to demonstrate that Pure Glass purposefully availed itself of the privilege of conducting activity in Washington. The court, like Aweida, focuses on whether Pure Glass purposefully directed activity at Washington.

The reasoning of the Ninth Circuit panel in *Washington Shoe* is dispositive of the parties' dispute over purposeful direction. There, the court considered an Arkansas shoe store selling boots that allegedly infringed on a Washington shoe manufacturer's copyrighted design. *Washington Shoe*, 704 F.3d at 670-71. The Arkansas store had purchased shoes from the Washington entity in the past, choosing its purchases from brochures and catalogues that one of the entity's salespeople had provided in visits to the Arkansas store. *Id.* at 671. When that salesperson discovered the knock-off boots in a later visit to the store, the Washington entity sent a cease-and-desist letter demanding the end of all sales of the knock-offs. *Id.* The Arkansas company nonetheless sold its remaining inventory of the allegedly infringing boots. *Id.*

The *Washington Shoe* court concluded that the infringement satisfied the "effects" test for purposeful direction from *Calder v. Jones*, 465 U.S. 783 (1984). *Washington Shoe*, 704 F.3d at 673-79. That test is as follows:

> The defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 803). Where a plaintiff passes the effects test, a court "may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state." *Washington Shoe*, 704 F.3d at 673.

**a. The Effects Test – Intentional Act**

Aweida has provided evidence of an intentional act. At a minimum, Pure Glass's use of the "Swiss Perc" mark after it received Aweida's cease-and-desist letter is an intentional act satisfying the effects test. The *Washington Shoe* court reached that conclusion as to the Arkansas store's sales of the infringing boots after receipt of the plaintiff's cease-and-desist letter. 704 F.3d at 675. Moreover, the evidence permits the inference that even before the cease-and-desist letter, Pure Glass knew of Mr. Aweida's designs and chose the "Swiss Perc" mark to misappropriate the goodwill Mr. Aweida had created in that mark. That inference arises not only from evidence of Pure Glass's conduct at the August 2011 trade show and its choice to use its own website to link to Aweida's Facebook page, but from the fact that it is unlikely that Pure Glass chose the "Swiss Perc" mark without knowledge of Aweida's use of that mark.

**b. The Effects Test – Express Aiming**

Aweida has also provided evidence of an act aimed at Washington. A fact-finder could conclude that once Pure Glass received the cease-and-desist letter, it knew that it was appropriating the marks of a person and company domiciled in Washington. In *Washington Shoe*, the court concluded that intentionally infringing activity before and after a cease-and-desist letter was evidence of "express aiming" at Washington. 704 F.3d at 675 ("We have repeatedly stated that the express aiming requirement is satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.") (internal quotations omitted). Here, as the court has just discussed, the evidence would permit the conclusion that both before and after the cease-and-desist letter, Pure Glass chose the "Swiss Perc" mark knowing that it was infringing upon the rights of a Washington resident. It did so, a fact-finder could infer, to confuse potential customers as to the true origin of the Pure Glass pipes. A fact-finder reaching that inference could

conclude that Pure Glass knowingly used unlawful tactics to compete with a Washington corporation. That is further evidence of "express aiming." *Id.* at 676.

Although the *Washington Shoe* court considered a defendant whose commerce was confined to one state, it explained how its conclusions would apply to a defendant like Pure Glass who marketed itself on the internet. It acknowledged that "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Washington Shoe*, 704 F.3d at 677 (quoting *Mavrix Photo*, 647 F.3d at 1231); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (noting that the existence of a website viewable by residents of the forum state is not sufficient to confer jurisdiction, and that the law requires "'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state"). But an attempt to compete over the internet with a plaintiff in the plaintiff's home state is purposeful direction at that state. *Id.* at 676-77. By contrast, a British bed and breakfast marketing itself on the internet as "Pebble Beach" had no intent to compete with the famous golf course in California. *Id.* at 678 (distinguishing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006). Like the *Washington Shoe* court, this court concludes that evidence of Pure Glass's willful infringement of Aweida's "Swiss Perc" mark, coupled with its knowledge of a Washington corporation's claim to the exclusive legal right to use that mark, is "sufficient 'individualized targeting' to establish the 'something more' necessary to satisfy the express aiming requirement." 704 F.3d at 678-79.

**c. The Effects Test – Harm Suffered in Forum State**

Aweida has also satisfied the third prong of the effects test. Its evidence would permit a fact-finder to conclude that Pure Glass knew that the impact of its intentional infringement of Aweida's marks would be felt by Aweida in Washington. *See Washington Shoe*, 704 F.3d at 679 (noting that it is foreseeable that the economic harm

that the holder of an intellectual property right suffers from its infringement will be felt in the holder's home state).

**3. Aweida's Suit Arises from Pure Glass's Washington-related Activities.**

Turning from the effects test back to the three-part test for exercising personal jurisdiction, the court concludes that Aweida's evidence supports the conclusion that its claims arise out of Pure Glass's forum-related activities. In this case, for the reasons the court has just described, Pure Glass's knowing infringement was Washington-related, even if it did not occur entirely (or even primarily) in Washington. Pure Glass argues that its suit must arise from its activities *in* Washington, but that is not what the test requires. It requires "forum-related" activity, *Schwarzenegger*, 374 F.3d at 802. As the *Washington Shoe* court explained, a court "may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state." 704 F.3d at 673. Here, unlike in *Washington Shoe*, Pure Glass has engaged in conduct inside Washington, via its website. But even without that conduct, Aweida's suit arises from allegations of Pure Glass's forum-related activity—knowing and intentional infringement of a Washington corporation's marks for the purpose of competing with that company in Washington.[1]

**4. The Court's Exercise of Personal Jurisdiction is Not Unreasonable.**

Because Aweida satisfied its burden as to the first two parts of the specific personal jurisdiction test, the burden shifts to Pure Glass to show that the exercise of jurisdiction would be unreasonable. *Bancroft & Masters*, 223 F.3d at 1088. Seven factors are relevant to the reasonableness inquiry, although none is dispositive:

> (1) the extent of the defendant['s] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum;

[1] The *Washington Shoe* court considered only the purposeful availment or direction part of the three-part test for specific personal jurisdiction. 704 F.3d at 672 ("Only the first prong is at issue in this case."). Nonetheless, its holding that conduct outside the forum state constitutes purposeful direction would be meaningless if the defendant could avoid the jurisdictional consequences of that action merely by noting that it occurred outside the forum state.

> (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). The defendant must make a "compelling case" of unreasonableness. *Bancroft & Masters*, 223 F.3d at 1088 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Some of the factors favor Pure Glass, some favor Aweida, and the court concludes that Pure Glass falls short of establishing a "compelling" case that the court's exercise of personal jurisdiction would be unreasonable. Pure Glass's purposeful interjection into Washington (by allegedly engaging in willful infringement of a Seattle entity's mark) was not extensive, but it was nonetheless significant. The court is not convinced that defending this action in Washington is substantially more burdensome than litigating in California. With the possible exception of trial, nothing about this case will require Pure Glass (as opposed to its counsel) to appear in Washington. There is no apparent conflict with the sovereignty of California. Washington has a plain interest in protecting the intellectual property rights of its residents. To the extent that the location of the forum impacts judicial efficiency, that factor favors resolution in Washington. The suit is already here, and the parties agree that courts in the Central District of California are more congested than this District's courts, at least in terms of the amount of time the average case takes to get to trial. The court does not find Washington especially important or unimportant to Aweida's interest in obtaining convenient and effective relief. And there is no dispute that there are many alternative forums for this suit. To summarize: no individual factor in the reasonableness analysis stands out. Considering all factors together, the court concludes that this is not a case where exercising personal jurisdiction would be unreasonable.

For the foregoing reasons, the court concludes that it has personal jurisdiction over Pure Glass in this lawsuit, at least as to Aweida's claims of trademark infringement. Because all of Aweida's claims arise out of a common nucleus of operative facts, the court need not determine whether each of those claims independently supports this court's personal jurisdiction. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (describing "pendent personal jurisdiction" over claims related to a claim for which the court has personal jurisdiction).

**B. The Court Will not Transfer Venue.**

As an alternative to its request that the court dismiss this case for lack of personal jurisdiction, Pure Glass asks the court to transfer venue to the Central District of California. It invokes both 28 U.S.C. § 1406(a), which permits the court to dismiss or transfer an action where the plaintiff has selected an improper venue, and § 1404(a), which gives a court discretion to transfer venue "for the convenience of parties and witnesses, in the interest of justice." In light of the court's determination that it has personal jurisdiction, it need not consider Pure Glass's invocation of § 1406(a). This District is not an improper venue. *See* 28 U.S.C. § 1391(b), (c) (making corporation subject to venue in any judicial district in which it is subject to personal jurisdiction). The court thus considers only § 1404(a).

The court can transfer venue to another federal district court in which a suit "might have been brought," but it can do so only "in the interest of justice." 28 U.S.C. § 1404(a). The court has the discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation omitted). At least eight factors are relevant in that case-by-case analysis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing factors, including "the location where the relevant agreements were negotiated and executed," the "plaintiff's choice of forum," the "state

that is most familiar with the governing law," the "parties' contacts with the forum," the "contacts relating to the plaintiff's cause of action," "differences in costs of litigation in the two forums," "the ease of access to sources of proof," and the public policy of the forum state). The burden is on Pure Glass, as the party seeking transfer, to demonstrate that the Central District of California offers a more convenient forum. *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007). There is no dispute that Aweida could have brought this action in the Central District of California. The court therefore considers the *Jones* factors to determine whether California is a more convenient forum.

Only a few factors favor Pure Glass. It has, it would appear, no contacts with Washington beyond the ones that the court described in its personal jurisdiction analysis. To the extent that its relationship with Bio Hazard is relevant to this suit, that relationship (and witnesses and proof related to it) are located in California. There are no other non-party witnesses who Pure Glass identifies in California. Even if there is more documentary evidence in California than in Washington, the court finds that consideration insignificant. Modern technology tends to make access to documentary proof easy from virtually any location, and there is no evidence that access to documentary proof in California will impose a burden on any party.

The remaining factors either favor no party or favor Aweida. Neither federal forum is more familiar with the Lanham Act, and this court is more familiar with Aweida's claims based on Washington law. Aweida chose this forum, and there is no evidence that it has significant contacts with California. There is no evidence that the cost of litigating this suit in Washington is meaningfully different than the cost of litigating it in California. To the extent that public policy considerations favor either party, they favor Washington's policy interest in protecting the intellectual property of its residents.

Guided by the *Jones* factors, the court finds that the interests of justice do not demand that the court transfer this action to the Central District of California.

**IV. CONCLUSION**

For the reasons previously stated, the court DENIES Pure Glass's motion to dismiss this case for lack of personal jurisdiction or to transfer it to the Central District of California. Dkt. # 12.

DATED this 27th day of May, 2015.

The Honorable Richard A. Jones
United States District Court Judge